# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7949 | **DATE** | 9/1/2004 |
| **CASE TITLE** | Leonie Mateer Consulting vs. Plano Molding Company et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Defendants' motion to dismiss the complaint is denied. The parties are to proceed with discovery. The case is set for a status hearing on October 20, 2004, at 11:00 a.m., to discuss what discovery has been done and to set a discovery cutoff date. |
| (11) | ☐ | [For further detail see order (on reverse side of/attached to) the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 0 2 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 19 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 SEP -1 PM 5:31 | 9/1/2004 date mailed notice | |
| SJR | courtroom deputy's initials | Date/time received in central Clerk's Office | SJR mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEONIE MATEER CONSULTING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 7949 |
| ) | |
| PLANO MOLDING COMPANY, an Illinois ) | |
| corporation, and THE BEANSTALK ) | |
| GROUP, INC., a New York corporation,) | |
| ) | |
| Defendants. ) | |

**DOCKETED SEP 02 2004**

## MEMORANDUM OPINION

Before the court is defendants' motion to dismiss the complaint for failure to state a claim. For the following reasons, the motion is denied.

## BACKGROUND

This is a diversity action for breach of contract. Plaintiff, Leonie Mateer Consulting, Inc. ("Mateer"), alleges that it is a third-party beneficiary of a contract between defendants, Plano Molding Company ("Plano") and The Beanstalk Group, Inc. ("Beanstalk").

The following facts are drawn from the complaint and are taken as true for purposes of this motion. Defendant Beanstalk is in the business of helping trademark and trade name owners to license their marks and names. In February 1992, defendant Plano entered into a written Representation Agreement (the "Representation

19

Agreement") with Beanstalk. Pursuant to the Representation Agreement, Beanstalk would find licensees for Plano's property (among which was the "Caboodles" name and trademark) and in return would receive a percentage of the compensation received from licensees of the property.

On June 2, 1997, Beanstalk and plaintiff Mateer entered into an agreement (the "Beanstalk-Mateer Agreement"). In return for a monthly advance against future royalties and a percentage of certain monies received by Beanstalk under the Representation Agreement, Mateer agreed to provide Beanstalk with development and marketing assistance for the Caboodles licenses (particularly in regard to developing a line of Caboodles cosmetics). On August 31, 1998, Beanstalk and Mateer amended their agreement to eliminate the monthly advance against royalties and add a provision that Mateer would be entitled to a percentage of monies received by Beanstalk under the Representation Agreement for new license agreements in new product categories that Mateer helped facilitate or negotiate.

In May 1998, Plano and White Hot Cosmetics Inc. ("White Hot") entered into a License Agreement whereby Plano licensed the Caboodles mark to White Hot for use with cosmetics. White Hot assigned the license to Caboodles Cosmetics LLC in April 1999. The license followed Caboodles Cosmetics LLC in its later incarnations as Caboodles Cosmetics LLP and then Caboodles Cosmetics, Limited

Partnership ("Caboodles Cosmetics"). Plano's president holds the largest ownership interest in Caboodles Cosmetics.

Plano and Beanstalk extended the original term of the Representation Agreement in written amendments dated February 27, 1992 and October 26, 1999.[1] In January 2000, they entered into a further amendment (the "Third Amendment"), which plaintiff alleges they did in part for Mateer's benefit. (Relevant portions of the Third Amendment are quoted infra.)

According to plaintiff, Caboodles Cosmetics has sold millions of dollars' worth of products under the Caboodles mark but has not paid any royalties under its license since November 2001 or any royalties on sales occurring after the first quarter of 2001. The complaint alleges that Plano has breached the Representation Agreement by failing to use its "best efforts" to pay to Beanstalk its full commissions due from Caboodles's sales of cosmetics and other products. As a result of the claimed breach, Beanstalk has not received payment of overdue commissions from Plano, and Mateer has not received its share of those commissions. Mateer states that it has suffered damages in excess of $200,000. It seeks damages plus costs and reasonable attorney's fees.

Plano now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Beanstalk joins in the motion.

---

[1] The original Plano-Beanstalk Agreement does not contain any references to Mateer, and evidently, neither do either of the first two amendments.

- 4 -

**DISCUSSION**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Plaintiff alleges that Plano breached the Representation Agreement-specifically, the Third Amendment to the Representation Agreement. The Third Amendment is attached to the complaint as Exhibit 4 and provides in relevant part:

> By mutual agreement, and except as provided herein, Beanstalk ceased to provide services to Plano under the Representation Agreement on May 11, 1999, including paragraph 2 of the Representation Agreement, and said paragraph 2 shall be deemed deleted effective as of May 11, 1999.[2]

---

[2] Paragraph 2 of the Representation Agreement provided that Plano engaged Beanstalk as its sole representative to seek out and negotiate license agreements.

Notwithstanding paragraph 8(a) of the Representation Agreement,[3] Beanstalk shall be solely entitled to collect from Plano's licensees, as set forth on Schedule A . . . all payments due under each License Agreement . . . until either (a) December 31, 2014 or (b) Seth M. Siegel is no longer in a senior management position in Beanstalk, whichever is earlier.[4] Beanstalk shall continue to provide services to Plano as set forth in Paragraphs 3, 4 and 5 of the Representation Agreement but only with respect to the collection of monies owed by Plano's Licensees and the payment of Plano's share of gross receipts collected. <u>Beanstalk shall remit to Leonie Mateer ("Mateer") her share, pursuant to the terms and conditions set forth in the June 2, 1997 agreement between Mateer and Beanstalk which agreement was amended on August 31, 1998 (collectively, the "Mateer-Beanstalk Agreement"), of Beanstalk's percentage of gross receipts collected from the Plano Licensees set forth on Schedule B attached hereto (collectively, the "Mateer-Plano Licensees"), which share is, pursuant to the Mateer-Beanstalk Agreement, 29.4 percent of Beanstalk's percentage of gross receipts collected from the Mateer-Plano licensees.</u>

In the event that Plano becomes entitled to collect from its licensees any payments due under a License Agreement, Plano shall (a) . . . furnish Beanstalk with a written statement of all payments actually received . . . and (b) simultaneously . . . pay to Beanstalk its full percentage of gross receipts as provided by the Representation Agreement and this letter. <u>In such event, Beanstalk shall continue to remit to Mateer her share of Beanstalk's percentage of gross receipts</u> . . . .

Plano may waive its share of royalties but may not waive Beanstalk's share without the prior written consent of Beanstalk. Further, with respect to Caboodles Cosmetics . . . or any successor or assignee thereto (hereinafter "Cosmetics Licensee"), if Cosmetics Licensee at any time prior to December 31, 2014 sells: (a) any color cosmetics bearing either the Property . . . or any

---

[3] Paragraph 8(a) of the Representation Agreement provided that in the event of termination, Plano would be solely entitled to receive from licensees all fees due under license agreements.

[4] The complaint alleges on information and belief that Seth M. Siegel still holds a senior management position at Beanstalk as of the date of the filing of the complaint. (Complaint, ¶ 25.)

trademarks . . . (hereinafter "Licensed Color Cosmetics"); and/or (b) any other products . . . bearing either the Property . . . or any trademarks . . . (hereinafter "Other Cosmetics Licensed Products"), Beanstalk shall be entitled to receive its full share of all royalties paid with respect to such sales of Licensed Color Cosmetics and/or Other Cosmetics Licensed Products, if any, as a commission. To the extent Cosmetics Licensee fails to pay actual royalties on sales of Licensed Color Cosmetics (hereinafter "Color Cosmetics Unlicensed Sales"), an imputed royalty on such sales of Licensed Color Cosmetics shall be calculated (using a royalty rate of Five percent (5%) of the first Five Million dollars of Net Sales (on a cumulative basis) and Four percent (4%) thereafter), and Beanstalk shall be entitled to receive its full share of such imputed royalty as a commission. To the extent Cosmetics Licensee fails to pay actual royalties on sales of Other Cosmetics Licensed Products (hereinafter "Other Cosmetics Unlicensed Sales"), the parties shall negotiate, in good faith, a royalty rate from which an imputed royalty shall be calculated, and Beanstalk shall be entitled to receive its full share of such imputed royalty as a commission, provided, however, that if the parties are unable to agree on such royalty rate, the royalty rate for Licensed Color Cosmetics (as set forth in the preceding sentence) shall be applied and Beanstalk's commission shall be calculated therefrom. . . .

In the event of Color Cosmetics Unlicensed Sales and/or Other Cosmetics Unlicensed Sales, Plano shall (a) within thirty (30) days after the end of each calendar quarter, furnish Beanstalk with a written statement with respect to sales of Licensed Color Cosmetics and/or Other Cosmetics Licensed Products made during the preceding calendar quarter; and (b) shall use its best efforts to simultaneously with (a) of this paragraph pay to Beanstalk its full commissions from such sales, or, with respect to both (a) and (b) of this paragraph, use its best efforts to direct Cosmetics Licensee to do so.

(Complaint, Ex. 4, Third Amendment, ¶¶ 1-3 (emphasis added).)

Defendants first point to the language "Beanstalk shall be solely entitled to collect from Plano's licensees" and contend that the complaint must be dismissed because Mateer concedes in the

complaint that no royalties were actually collected from Caboodles Cosmetics and "there is no contractual obligation on the part of either Plano or Beanstalk to provide Plaintiff with payment of any percentage of such uncollected royalties." (Memorandum at 5.) This argument wholly fails to address the contractual obligation that plaintiff is alleging was breached: Plano's obligation to use its "best efforts" to pay Beanstalk its full commissions (including imputed royalties in the event that a licensee failed to pay royalties).

Defendants also argue that Mateer is merely an incidental rather than a direct beneficiary of the Third Amendment and thus does not have a right to sue on the contract as a third-party beneficiary. We disagree. "Third-party beneficiary status is determined against 'the contract and the circumstances surrounding the parties at the time of its execution.' Illinois follows the 'intent to benefit' rule; that is, third-party beneficiary status is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to their agreement." XL Disposal Corp. v. John Sexton Contractors Co., 659 N.E.2d 1312, 1316 (Ill. 1995) (citation omitted). "[I]t is well established that in determining third-party beneficiary status, the contract is controlling." Ball Corp. v. Bohlin Bldg. Corp., 543 N.E.2d 106, 108 (Ill. App. Ct. 1989).

Defendants assert that the Third Amendment was merely intended to "clarify" and "reassign responsibilities" with respect to the collection of licensing revenues. This argument is belied by the plain language of the Third Amendment, which is quoted in full <u>supra</u>. It expressly provides that Beanstalk would pay Mateer its share of Beanstalk's share of the gross receipts, clearly showing an intent to confer a benefit on Mateer. Therefore, Mateer has standing to enforce the Third Amendment as a third-party beneficiary.

The remainder of defendants' arguments are without merit. Accordingly, the motion to dismiss will be denied.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the complaint is denied. The parties are to proceed with discovery. The case is set for a status hearing on October 20, 2004, at 11:00 a.m., to discuss what discovery has been done and to set a discovery cutoff date.


DATE:          September 1, 2004


ENTER:         _____
               John F. Grady, United States District Judge